```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VALENTINE HOLLINGSWORTH, III,
as representative of the Estate of
Valentine Benjamin Hollingsworth,
deceased,

                    Plaintiff,              6:18-CV-06013 MAT
    v.

ROSELAND WAKE PARK, LLC,                    DECISION
RIXEN US, LLC, and                          and ORDER
RIXEN CABLEWAYS GMBH,

                    Defendants.
_____
```

## INTRODUCTION

Plaintiff Valentine Hollingsworth, III (hereinafter, "Plaintiff") brings this action against defendants Roseland Wake Park, Rixen US, LLC, and Rixen Cableways, GMBH (collectively, the "Defendants"), alleging negligence, gross negligence, and recklessness, and strict products liability. Docket No. 1. Plaintiff seeks damages for the decedent's pre-impact terror, conscious pain and suffering, and wrongful death, as well as punitive damages. *Id*.

Presently before the Court is Defendants' joint motion for partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal of Plaintiff's loss of services claim. Docket No. 45. For the reasons set forth below, Defendants' motion for partial summary judgment is granted. Plaintiff's loss of services claim is dismissed.

## BACKGROUND

The factual allegations in the complaint are summarized as relevant, below. Plaintiff is the father of the decedent, Valentine Benjamin Hollingsworth, and is the personal representative of his estate. Docket No. 1 at ¶ 1. Defendant Roseland Wake Park ("Roseland") operated a wake board park in Canandaigua, New York. *Id*. at ¶ 5. Roseland utilized a full-size cable wakeboarding system that pulled riders in a continuous loop, which stretched 2100 feet and was equipped with obstacles, including ramps and jumps. *Id*. The wake boarding system, obstacles, ramps, and jumps were manufactured and designed by Rixen Cableways, and were purchased from and distributed by Rixen US. *Id*. at ¶ 6.

On September 22, 2016, the decedent, a 22-year old student at Rochester Institute of Technology, attended "college night" at Roseland's wakeboard park. *Id*. at ¶ 10. The decedent was accompanied by his friend, Jacob James. *Id*. Both the decedent and Mr. James utilized the full-size cable wakeboarding system. *Id*. at ¶ 11. They completed at least one loop of the 2100 foot cable system without incident. *Id*. at ¶ 12.

During the the next loop, the decedent approached a ramp/jump called the "funbox." *Id*. at ¶¶ 13, 14. As he approached from the right side of the "funbox," the decedent's wakeboard hit the protrusion on the right side of the obstacle, launching him head

first into the ramp portion, where his head made contact with the ramp. *Id*. at ¶ 15. James, who was approximately two positions behind the decedent, saw him floating next to the "funbox." *Id*. at ¶¶ 13, 16. Both James and Roseland employees attempted to rescue the decedent. *Id*. at ¶¶ 17-20. EMTs arrived on scene and transported the decedent to F.F. Thompson Hospital in Canandaigua, after which he was taken by Mercy Flight to Strong Memorial Hospital in Rochester, New York. *Id*. at ¶ 21. The decedent was stabilized at Strong Memorial Hospital, but he experienced severe brain swelling. *Id*. at ¶ 22. He was pronounced dead on September 24, 2016. *Id*. at ¶ 23.

## PROCEDURAL HISTORY

Plaintiff filed the instant action on January 5, 2018, alleging negligence, gross negligence, and recklessness against defendant Roseland, and strict products liability based on defective design and failure to warn, against defendants Rixen Cableways and Rixen US. Docket No. 1. The complaint also seeks damages for the decedent's pre-impact terror, conscious pain and suffering, and wrongful death, as well as punitive damages. *Id*. Defendants filed their answers to Plaintiff's complaint on March 19, 2018. Docket Nos. 3, 5.

On June 28, 2019, Defendants filed a joint motion for partial summary judgment, seeking dismissal of Plaintiff's claim for damages based on Plaintiff's alleged loss of services. Docket

Nos. 45-49. Plaintiff responded on July 29, 2019 (Docket Nos. 51-55), and Defendants filed their reply on August 12, 2019 (Docket No. 56).

**DISCUSSION**

I. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) states that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* When considering a motion for summary judgment, the court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

II. **Defendants' Motion for Partial Summary Judgment**

Defendants' contend that they are entitled to summary judgment on Plaintiff's claim for damages pursuant to the New York Estates, Powers and Trusts Law ("EPTL"), Section 5-4.3, because that statute does not allow "for the recovery of the sentimental and emotional

impact of the loss of services resulting from a decedent's death." Docket No. 49 at 5. In response, Plaintiff argues that he seeks damages for pecuniary loss, rather than damages based on emotional suffering, and that determination of pecuniary loss is question of fact for the jury. Docket No. 54 at 6-7.

### A. <u>**Plaintiff's Alleged Damages**</u>

The following factual background is taken from Plaintiff's and Defendants' Rule 56 Statement of Material Facts. Docket Nos. 47 and 55. Plaintiff seeks wrongful death damages stemming from the death of his son. Docket No. 47 at ¶ 1; Docket No. 55 at ¶ 1. On December 4, 2018, Plaintiff and Defendants entered into a stipulation, which dismissed with prejudice Plaintiff's "'damage claims against all defendants seeking a recovery for lost earnings, benefits or other financial support arising from the death of the decedent.'" Docket No. 47 at ¶ 2; Docket No. 55 at ¶ 2; Docket No. 25.

Defendants contend that thereafter, at a court hearing on January 10, 2019, Plaintiff conceded that the decedent was under no legal obligation to provide any services to his parents, and that Plaintiff would not argue at trial that he actually needed any financial support from his son. Docket No. 47 at ¶ 3. Plaintiff disagrees with this statement, inasmuch as Plaintiff "specifically alleged his son would have provided a variety of services to assist Plaintiff and Decedent's mother as they aged and why having these

services provided by their son would enhance their pecuniary value compared to such services provided by strangers." Docket No. 55 at ¶ 3. Plaintiff contends that "[d]espite Plaintiff's ability to pay for these services, the services have value and such value is enhanced by these services being performed by a loved one as opposed to a stranger," and "[t]he value of the services Decedent would have provided to his parents as he aged is a question of fact for the jury." *Id*.

Defendants contend that on February 1, 2019, Plaintiff served a supplemental discovery response in order to narrow the loss of services being claimed as a result of the decedent's death. Docket No. 47 at ¶ 4. Plaintiff disagrees with this statement, and claims that he served the supplemental discovery response "in accordance with Magistrate Judge Feldman's decision for Plaintiff to outline exactly what loss of services he would be claiming at trial and a value of the pecuniary losses to the distributees." Docket No. 55 at ¶ 4. Defendants contend that Plaintiff then agreed to further limit his loss of services claim to "'the additional pecuniary value to [Plaintiff and Mrs. Hollingsworth] of having these services performed by their son as opposed to a stranger.'" Docket No. 47 at ¶ 5. Plaintiff disagrees with this statement, stating that his supplemental discovery response "clearly lays out Plaintiff's loss of services he is claiming his son would have provided. An additional part of Plaintiff's loss of services claim

is the enhanced value to Plaintiff and Mrs. Hollingsworth of having these services performed by their loving son as opposed to a stranger." Docket No. 55 at ¶ 5.

The supplemental discovery response to which Plaintiff refers is found at Docket No. 29-4. Plaintiff's supplemental response provides that he "will claim the pecuniary value of the following lost voluntary services of their deceased son:

> 1. Assistance with management of Plaintiff's and decedent's mother's future medical care, including skilled nursing. This includes assistance in interviewing and hiring care providers, supervision of such providers within the home to assure that appropriate care is being rendered, and making changes in such care providers if it is not, assistance with medical decisions regarding choices of therapy, advocacy for Plaintiff and decedent's mother with care providers and hospitals, and serving as health care proxy to make decisions about care when Plaintiff and decedent's mother become incapacitated to make such decisions.
>
> 2. Assistance with management of finances in the future in the event Plaintiff and decedent's mother become incapable due to age or infirmity to make such decisions for themselves, including interviewing and hiring consultants and employees to manage finances, assuring investments are being made appropriately, and supervising any consultants and employees hired to perform management to assure the services rendered are appropriate and in the best interests of the Plaintiff and decedent's mother.
>
> 3. Assistance with management of their home in the future in the event Plaintiff and decedent's mother become incapable due to age or infirmity to make such decisions for themselves, including interviewing and hiring consultants and employees to manage their home, assuring bills are being paid, and supervising any consultants and employees hired to perform services in their home to assure the services rendered are appropriate and in the best interests of the Plaintiff and decedent's mother.

> 4. Assistance with shopping for groceries, clothing, gifts, and personal items in the future in the event Plaintiff and decedent's mother become incapable due to age or infirmity of performing these services for themselves.

Docket No. 29-4 at ¶¶ 1-4.

Defendants contend that on May 6, 2019, during a hearing before Judge Feldman, Plaintiff further limited his loss of services claim to "the loss of the psychological benefit and emotional support of having a loved one (Decedent) perform services for Plaintiff and his wife in their old age, instead of a stranger." Docket No. 47 at ¶ 6; *see also* Docket No. 43. Plaintiff denies this statement, and refers the Court to its supplemental discovery response, "which lays out the loss of services Plaintiff is claiming in this case." Docket No. 55 at ¶ 6. Plaintiff contends that he "did not limit his loss of services claim to the 'loss of psychological benefit and emotional support of having a loved one (Decedent) perform services for Plaintiff and his wife in their old age, instead of a stranger.' An additional part of Plaintiff's loss of services claim is the enhanced benefit Plaintiff and Mrs. Hollingsworth would have received by having Decedent perform these services, which is derived from the familial relationship." *Id*.

### B. **<u>Plaintiff's Loss of Services Claim is Dismissed</u>**.

At the crux of the issue currently before the Court is how the parties characterize the type of damages sought by Plaintiff for

his loss of services claim. While Plaintiff argues that the damages he seeks are pecuniary in nature, Defendants contend that the type of damages described by Plaintiff are emotional or sentimental - not pecuniary.

It is well-settled that emotional damages are not recoverable under New York's wrongful death statute. "New York courts have strictly construed the wrongful death statute, N.Y. Est. Powers & Trusts Law § 5-4.3 . . . to allow recovery only for pecuniary loss. . . . Accordingly, New York has consistently refused to allow recovery for such claims as mental or emotional suffering in wrongful death actions." *Morgan Guarantee Trust Co. of N.Y. v. Garrett Corp.*, 625 F. Supp. 752, 760-61 (S.D.N.Y. 1986) (citations omitted); *see also Garland v. Herrin*, 724 F.2d 16, 20 (2d Cir. 1983) ("Ever since the wrongful death statute was first enacted in 1847, New York's courts have strictly construed it to exclude recovery for grief, loss of affection and fellowship, and loss of consortium. . . . We conclude that the New York Court of Appeals would not at this time recognize plaintiffs' claims for damages resulting from the severe emotional distress caused by the death of their daughter."); *In re Air Crash Near Clarence Center, New York, on Feb. 12, 2009*, No. 09-md-2085, 2013 WL 12421873, at *2 (W.D.N.Y. Nov. 3, 2014) ("the law as currently enacted unquestionably precludes recovery of non-pecuniary damages for wrongful death claims.").

Rather, "[t]he plaintiff in a wrongful death action is entitled to recover damages for only pecuniary loss, i.e., the economic value of the decedent to each distributee at the time decedent died. There are four elements of compensable loss encompassed by the general term 'pecuniary loss': (1) decedent's loss of earnings; (2) loss of services each survivor may have received from decedent; (3) loss of parental guidance from decedent; and (4) the possibility of inheritance from decedent." *Huthmacher v. Dunlop Tire Corp.*, 309 A.D.2d 1175, 1176 (4th Dep't 2003). Here, Plaintiff has clarified that he is not seeking damages for lost earnings, benefits or other financial support arising from his son's death (*see* Docket No. 25 at ¶ 2), nor is he arguing that his son would have actually performed any unique medical or financial services for them (*see* Docket No. 46-2 at 10-13). In other words, Plaintiff is not "seeking . . . the replacement value for . . . services, meaning what it would cost to find someone else outside of the family to perform those services[.]" Docket No. 46-2 at 23.

In arguing that Plaintiff's claimed damages under the wrongful death statute are purely emotional or sentimental, Defendants refer specifically to the May 6, 2019 court appearance before Judge Feldman. *See* Docket No. 49 at 9-11, 15; *see also* Docket Nos. 43, 46-2. Plaintiff's counsel clarified the damages claimed under New York's wrongful death statute explaining that "in essence, it's the - it's the psychological benefit to [Plaintiff and his wife] of having a loved one perform these services as

-10-

opposed to paying someone." Docket No. 46-2 at 7-8. Plaintiff's counsel also stated that he disagreed with defense counsel's characterization of these damages as "emotional." *Id*. at 7. Plaintiff's counsel acknowledged that while the characterization of these damages as "emotional" "certainly fits in some sense, . . . emotional damages are not recoverable under New York law for wrongful death. So that's the reason I did not like that word." *Id*. At the conclusion of the hearing, the following exchange took place:

> Defense counsel: I just want to make sure that we have, you know, an understanding of exactly what we're moving - what the claim is so we know how to define it in terms of . . . summary judgment.
>
> Judge Feldman: The claim is there's a pecuniary value to having a family member perform management services over the assets of -
>
> Plaintiff's counsel: The assets, the person, the personal - the personal bills, all of those types of things, Your Honor, just like everyone does for their own parents when they get elderly.
>
> Judge Feldman: There's some value for that, it kind of morphs into an emotional connection, but he's assigning - wants to assign a pecuniary value to that, and you're claiming that's precluded.
>
> Defense counsel: So the point is that what the plaintiffs are seeking is not the replacement value for their services, meaning what it would cost to find someone else outside of the family to perform those services, but rather the value to the family emotionally of having a family doing it?
>
> Judge Feldman: Right. [Plaintiff's counsel] has indicated that the nature of the services would be exactly the same, correct?
>
> Plaintiff's counsel: Correct.

> Judge Feldman: I mean, you'd still have to hire an accountant, you'd still have to hire a nurse, you'd still have to hire a tax preparer, you'd still have to do whatever you do, but there's a value in having - an emotional value or a pecuniary emotional value in having a family member be the one that's the intermediary, correct?
>
> Plaintiff's counsel: Correct, Your Honor.

*Id.* at 22-23.

At the May 6, 2019 hearing, Plaintiff likened the type of damages he was seeking to "a child who loses a parent and is able to recover for the value of nurturing and services." *See* Docket No. 46-2 at 7. Plaintiff explained that "I believe that New York law recognizes . . . when children provide very much the same types of services to elderly parents, that there's a pecuniary value . . . as well." *Id.*; *see also* Docket No. 54 at 20-22. Defendants argue that Plaintiff is incorrect, and that while surviving children of deceased parents are permitted under New York law to recover for loss of parental care, the reverse is not true. *See* Docket No. 49 at 16.

In cases involving a child's loss of training and guidance, New York courts have "broadly construed" the term "pecuniary injury" to include "recovery for the 'economically recognized and calculable losses of the household management services of [the deceased]' and 'the premature loss of the educational training, instruction and guidance [that the children] would have received from the now-deceased parent.'" *Mono v. Peter Pan Bus Lines, Inc.*, 13 F. Supp. 2d 471, 477 (S.D.N.Y. 1998) (quoting *Gonzalez v. N.Y.C. Housing Authority*, 161 A.D.2d 358, 359 (1st Dep't 1990))

-12-

(alterations in original). As explained by the New York Court of Appeals in *Tilly v. Hudson River Railroad Co.*, "*infant children sustain a loss from the death of their parents*, and especially of their mother, of a different kind. She owes them the duty of nurture and of intellectual, moral and physical training, and of such instruction as can only proceed from a mother." 24 N.Y. 471, 476 (N.Y. 1862) (emphasis added); *see also Rogow v. U.S.*, 173 F. Supp. 547, 561 (S.D.N.Y. 1959) ("[t]he New York Court of Appeals has stated that the intellectual, moral and physical training *which a parent gives to a child* . . . 'is not pecuniary in a very strict sense of the word, but it belongs to that class of wrongs as distinguished from injuries to the feelings and sentiments; and . . . therefore, it falls within the term as used in the statute.'") (quoting *Tilly*, 24 N.Y. at 476) (emphasis added); *Plotkin v. N.Y.C. Health and Hospitals Corp.*, 221 A.D.2d 425, 426 (2d Dep't 1995) ("The loss of *parental* nurture and care, as well as physical, moral, and intellectual training, may also be included in determining pecuniary injury.") (emphasis added). In other words, the pecuniary nature of this instruction and guidance is premised on the duty a parent has to his or her child. The Court further notes that New York courts have permitted recovery by adult children when there is proof that their decedent parent was still providing services to them. *See Gonzalez v. N.Y.C. Housing Authority*, 77 N.Y.2d 663, 669 (N.Y. 1991).

Plaintiff attempts to extend the reasoning in these cases to those instances where a parent seeks to recover for the loss of a

-13-

child. *See* Docket No. 46-2 at 7. The Court recognizes that the type of damages Plaintiff is attempting to recover, which he describes as the decedent's assistance with management and oversight (*see* Docket Nos. 29-4, 46-2 at 11-13), arguably falls under the definition of "pecuniary" as defined by the New York courts in the above-mentioned cases. However, New York courts have declined to apply this broad definition of pecuniary loss in cases where the plaintiff is not owed a duty of educational and intellectual nurturing. As explained in *Bumpurs v. N.Y.C. Housing Authority*:

> Finally, plaintiff fares no better in terming this a "loss of nurture" claim, in reliance on *Tilley v. Hudson Riv. R.R. Co.* (24 N.Y. 471). There, the court ruled that affectional injuries of grief and deprivation of society and companionship are not compensable in a wrongful death action, as they are not pecuniary injuries. *However, the court also stated that minor children could allege a pecuniary injury from the premature loss of the educational training, instruction and guidance they would have received from their now-deceased parent, because that loss could affect their "future well-being in a worldly point of view. . . . [and is] distinguished from injuries to the feelings and sentiments." Recovery of this sort, however, is tied to the parental role of providing minor children with educational and intellectual nurturing and the financial effect this particular loss of nurturing could have on the future of the infant*.

139 A.D.2d 438, 439 (1st Dep't 1988) (internal citations omitted) (emphasis added); *see also Smith v. Hub Manufacturing, Inc.*, 634 F. Supp. 1505, 1511-12 (N.D.N.Y. 1986) (holding that under E.P.T.L. § 5-4.3(a), the plaintiff parents could recover medical, funeral, and burial expenses, as well as expenses relating to their travel and the decedent's future financial support, but noting that

"damages for the loss of a child's services during minority are available, but damages for loss of affection are not.").

The Court agrees with Defendants that the type of damages Plaintiff seeks for his loss of services claim are not recoverable under New York's wrongful death statute. In his memorandum of law in opposition to summary judgment, Plaintiff argues that "Defendants attempt to redraft Plaintiff's claims of pecuniary loss into claims for emotional suffering. . . ." Docket No. 54 at 6. However, it is Plaintiff - not Defendants - who mischaracterizes his own claim. It is clearly established that recovery of emotional damages is precluded under the wrongful death statute. However, Plaintiff conflates the concept of recovering the cost of replacement services - which is permitted under the statute - and the valuation of emotional damages, which is not permitted under the statute. *See* Docket No. 46-2 at 7-8 ("[T]he reason I disagree with [defense counsel] was the emotional - the word 'emotional.' It certainly fits in some sense, but emotional damages are not recoverable under New York law for wrongful death. So that's the reason I did not like that word. But, in essence, it's the - it's the psychological benefit to them of having a loved one perform these services as opposed to paying someone."). Plaintiff has conceded that he is not seeking the cost of replacement services; rather, he is seeking to recover for the cost of having a family member – namely, his son – oversee the individuals Plaintiff would hire to perform certain services, such as providing medical care and managing finances. *See* Docket Nos. 29-4, 46-2 at 10-13.

Plaintiff may not avoid the bar to seek emotional damages by merely labeling the damages he seeks as "pecuniary" when substantively, they are of an emotional or sentimental nature. *See, e.g., Hartman v. Dermont*, 89 A.D.2d 807, 808 (4th Dep't 1982) (dismissing claim for pecuniary loss under New York's wrongful death statute, where the only showing of "pecuniary" loss was "the daughter's testimony in which she described the decedent as her advisor and counselor" because "there was no proof the decedent possessed any special education or experience which would have a pecuniary impact on her daughter. . . .").

The Court recognizes, and agrees with, Plaintiff's statement that New York law allows parents to recover pecuniary losses for the death of their child. *See* Docket No. 54 at 15. However, as explained above, the harm for which Plaintiff seeks to recover here is not pecuniary. Plaintiff's counsel clearly stated at the May 6, 2019 hearing before Judge Feldman that he was seeking damages for "in essence . . . the psychological benefit . . . of having a loved one perform . . . services as opposed to paying someone." Docket No. 46-2 at 7-8. Plaintiff's counsel also agreed with the characterization of what Plaintiff was seeking, *i.e.*, having a family member perform certain services, as having an emotional value. *See id*. at 23. These types of damages are not recoverable under New York's wrongful death statute. Accordingly, Plaintiff's loss of services claim is dismissed.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion for partial summary judgement is granted. Plaintiff's loss of services claim is dismissed.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:   November 29, 2019
         Rochester, New York